CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
July 21, 2025
LAURA A. AUSTIN, CLERK
BY: s/B. McAbee
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| BOBBY WYATT, Administrator for the Estate of Anthony Wyatt, deceased, | |
| Plaintiff, | Case No. 4:24-cv-00049 |
| v. | **MEMORANDUM OPINION** |
| SHERIFF MIKE MONDUL, *et al.*, | By:   Hon. Thomas T. Cullen |
| Defendants. | United States District Judge |

When Anthony Wyatt ("Wyatt") was arrested for public intoxication, everyone involved probably assumed that he would spend the night in jail and go home the following the morning. Tragically, things didn't turn out that way. Apparently not intoxicated but suffering from acute alcohol withdrawal syndrome, Wyatt passed out in his cell shortly after being booked into the Danville City Jail. He died just a few hours later.

Plaintiff Bobby Wyatt ("Plaintiff"), the administrator of Anthony Wyatt's estate, sued several individuals associated with Wyatt's arrest and jailing. Among them, he has sued: Mike Mondul, Sheriff of the City of Danville; Officer J.K. Reynolds, the arresting officer; and Sergeant Robert Skrocki, the intake officer who processed Wyatt into the jail (collectively, "Defendants"). Both Sheriff Mondul and Officer Reynolds moved to dismiss Plaintiff's complaint for failure to state a claim.[1] A final defendant, Deputy John Doe, has not yet been identified.

---

[1] Sgt. Skrocki joined Sheriff Mondul's motion, but did not move to dismiss the sole count asserted against him.

The motions have been fully briefed by the parties, and the court has reviewed their arguments, the pleadings, and the applicable law. For the reasons laid out below, the motions will be granted in part and denied in part. Specifically, Plaintiff's claim for wrongful arrest will be dismissed, but all other claims will survive.

## I.   PLAINTIFF'S ALLEGATIONS

The facts are taken from Plaintiff's complaint and, for purposes of ruling on the motions to dismiss, are presumed to be true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam).

On November 22, 2022, Wyatt was "outside a pet care facility" in Danville, Virginia, apparently exhibiting "odd behavior." (Am. Compl. ¶ 9 [ECF No. 25].) Defendant Officer J.C. Reynolds ("Reynolds") approached Wyatt and quickly ascertained "that something was wrong with Mr. Wyatt and, as a result, called Mr. Wyatt's fiancée, Janet Fisher." (*Id.* ¶ 11.) Apparently, at the time of their interaction, Wyatt "was suffering from acute alcohol withdrawal syndrome. People that suffer from acute alcohol withdrawal syndrome often exhibit the following symptoms: withdrawal delirium, visual and auditory hallucinations, disturbance of attention and cognition, agitation, and profuse sweating." (*Id.* ¶ 10.) "Ms. Fisher explained to Reynolds that Mr. Wyatt had not consumed alcohol in 4 days and was not intoxicated." (*Id.* ¶ 12.) Notably, Plaintiff does not allege when Ms. Fisher last saw Wyatt or whether she indicated that she had a sufficient basis to know whether he had (or had not) been drinking recently (or ingesting, inhaling, or injecting other intoxicating substances).[2]

---

[2] Plaintiff relies heavily on evidence that Wyatt had not been drinking, but Virginia's public-intoxication statute outlaws public intoxication "whether such intoxication results from alcohol, narcotic drug, or other intoxicant or drug of whatever nature . . . ." Va. Code Ann. § 18.2-388.

- 2 -

Unpersuaded by Ms. Fisher's assurances that Wyatt was not drunk, Reynolds arrested Wyatt for public intoxication. (*Id.* ¶ 12.) Reynolds asked Ms. Fisher to come pick Wyatt up rather than have him face arrest, but she "advised that she could not." (*Id.*) "Other than Mr. Wyatt's strange behavior, there was no indicia that he was intoxicated"; he did not smell of alcohol and "there were no signs of drugs or drug use . . . ." (*Id.* ¶ 13.)

When Reynolds arrived at the Danville City Jail with Wyatt, Wyatt "could not even extricate himself from the police vehicle. Indeed, Mr. Wyatt could not walk and needed to be transported into the jail by a wheelchair." (*Id.* ¶ 15.) Reynolds secured a warrant for Wyatt for public intoxication, although Plaintiff contends that "Reynolds had to either falsify evidence to the magistrate or presented [*sic*] Mr. Wyatt's case with extreme disregard for the truth" to secure the warrant. (*Id.* ¶ 16.)

Defendant Sgt. Robert Skrocki booked Wyatt into the jail and performed his medical screening. (*Id.* ¶ 17.) Although Wyatt's screening indicated that he "refused" to answer the questions that Skrocki posed to him, Plaintiff contends that Wyatt was "unable to answer the questions due to his worsening" alcohol withdrawal syndrome. (*Id.*) "At no time [during the screening or after] did Mr. Wyatt receive any breath or blood tests, and at no time did Mr. Wyatt receive medical attention." (*Id.* ¶ 18.)

After his screening, at approximately 3:20 p.m., Wyatt was placed into a holding cell. (*Id.* ¶ 19.) While in the cell, Wyatt can be seen, on security-camera footage, lying on the floor "in obvious distress." (*Id.*) Several deputies walked by, but none intervened. Throughout the afternoon, Wyatt "crawled around on the floor of his cell in obvious distress for over two hours, with no interaction from the deputies." (*Id.* ¶ 20.)

At approximately 5:30 p.m., some two hours after he was placed in a cell, Wyatt "was discovered lying on the floor with his hand in the [cell] toilet, not breathing, and with no pulse." (*Id.* ¶ 21.) Wyatt was taken to SOVAH Health, the hospital in Danville, and pronounced dead at 6:40 p.m. (*Id.*) "The cause of death was listed as acute hemorrhagic pancreatitis due to complications of chronic alcoholism, . . . [but] his death was actually caused by alcohol withdrawal syndrome." (*Id.* ¶ 22.)

Plaintiff brought suit in this court on November 18, 2024, against Defendants Sheriff Mike Mondul (in his individual capacity), Officer Reynolds, Sgt. Robert Skrocki, and Deputy John Doe, and filed an amended complaint on March 3, 2025. In his amended complaint, Plaintiff raises three causes of action: unreasonable seizure in violation of the Fourth and Fourteenth Amendments against Reynolds (Count I); deliberate indifference to serious medical needs against Reynolds, Skrocki, and Doe (Count II); and implementation of a policy of denial, delay, and or withholding of medical care, actionable under 42 U.S.C. § 1983, against Mondul in his individual capacity (Count III). (*See generally* Compl. ¶¶ 32–52.) Mondul and Skrocki filed their present motion to dismiss on March 14, and Reynolds filed his motion to dismiss on March 17. After extensive briefing, the motions to dismiss are before the court for disposition.[3]

## II.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the

---

[3] The court dispenses with oral argument because, after reviewing the pleadings, briefing, and applicable law, further argument would not aid the court in deciding the issues before it.

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.    ANALYSIS

The court will address the overlapping arguments for dismissal by claim, as Plaintiff laid them out.

#### A. Count I: Unreasonable Seizure

Officer Reynolds contends that Plaintiff fails to state a claim for unreasonable seizure under the Fourth Amendment because, taking the facts of the complaint as true, a reasonable officer would have believed that probable cause existed to arrest Mr. Wyatt for public intoxication. The court agrees.

An arrest is a seizure, and unreasonable seizures violate the Constitution. A seizure is reasonable if it supported by probable cause. "Probable cause is a 'flexible, common-sense standard' that is determined by a totality-of-the-circumstances approach." *Trail v. Cressell*, 494 F. Supp. 3d 349, 357 (W.D. Va. 2020) (quoting *Florida v. Harris*, 568 U.S. 237, 240 (2013)). "While probable cause requires more than bare suspicion, it requires less than that evidence

necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation omitted). "The court analyzes the facts known to the arresting officers 'to determine whether they provide a probability on which reasonable and prudent persons would act,' disregarding the subjective beliefs of the officers as to whether they believed the facts established probable cause." *Trail*, 494 F. Supp. 2d at 357 (quoting *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017)).

Plaintiff's complaint is not a model of clarity—perhaps by design. Plaintiff claims that Wyatt was suffering from acute alcohol withdrawal syndrome, which is characterized by "withdrawal delirium, visual and auditory hallucinations, disturbance of attention and cognition, agitation, and profuse sweating." (Am. Compl. ¶ 10.) Presumably he means to allege that Wyatt was suffering from those symptoms when Officer Reynolds encountered him; he doesn't precisely say.

Given the nature of the alleged symptoms, the court is at a loss to understand how a reasonable police officer should distinguish an individual suffering from alcohol withdrawal syndrome from one who is intoxicated. Both could suffer from some type of delirium; both might experience hallucinations (or what appears to an observer as hallucinations); both would certainly have a disturbance of attention and cognition; both could be agitated; and both could be sweating profusely. On these facts, a reasonable officer encountering an individual suffering from alcohol withdrawal syndrome would be hard-pressed to distinguish it from intoxication.[4] On the facts alleged in the Amended Complaint, a reasonable officer would certainly have a

---

[4] True, the absence of the smell of alcohol may be telling, but that does little to rule out intoxication by some other substance.

sufficient basis to conclude that there was probable cause that Wyatt was intoxicated, and therefore his subsequent arrest, under Plaintiff's allegation of the facts, was not unreasonable.

Plaintiff attempts to avoid this conclusion by alleging that Wyatt's fiancée, Janet Fisher, told Reynolds that Wyatt was sober and had not imbibed in four days. (Am. Compl. ¶ 12.) This fact does nothing to negate the ample probable cause facing Officer Reynolds, nor does it account for the possibility of intoxication from "narcotic drug, or other intoxicant or drug of whatever nature . . . ." Va. Code Ann. § 18.2-388. Tellingly, Plaintiff does not cite a single case for the proposition that a biased third party's protestation of innocence negates probable cause.[5] That is because it is not the law, and the court declines to adopt that proposition here.

Moreover, even if it was true that Wyatt was sober, the facts that day—as Plaintiff alleges them—would nevertheless lead a reasonable officer to believe that Wyatt was intoxicated. "The law cannot demand that officers be mind readers," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), and probable cause existed to arrest Wyatt for public intoxication, based on the facts Plaintiff alleges were apparent to Officer Reynolds.

Plaintiff also cites *Novak v. Stuart*, No. 1:22CV00010, 2022 U.S. Dist. LEXIS 150199 (W.D. Va. Aug. 22, 2022), in support of his position, but his reliance is misplaced. In that case, the court found that there was not probable cause to believe that the plaintiff, Christopher Novak, was intoxicated when he was undergoing a medical emergency—a seizure brought on by an undiagnosed brain tumor. *Id.* at *4. Like Reynolds, the arresting officer, Trooper Stuart, observed that Novak was "confused and disoriented" but did not smell any alcohol on him.

---

[5] Indeed, one could argue that Ms. Fisher's statements, which implied that Plaintiff had a drinking problem, only served to confirm the officer's reasonable conclusion that he was intoxicated.

- 7 -

*Id.* at *3–4. But unlike Wyatt, Novak "had blood on his face and sweatshirt," repeatedly blew 0.00 on a breathalyzer, "never slurred his words," and, while on the way to the hospital, "his confusion subsided." *Id.* at *3–4. Moreover, Trooper Stuart "did not inform the magistrate that Novak passed multiple breathalyzer tests, that Novak exhibited signs of injury, or that Trooper Stuart did not find any evidence of drugs or alcohol during his search." *Id.* at *4. Officer Wyatt's actions, as alleged, are a far cry from Trooper Stuart's problematic conduct. And it is these important factual distinctions—not the mere fact that a medical issue was responsible for Novak's odd behavior—that formed the basis of the *Novak* court's conclusion that there was no probable cause for arrest. *See id.* at *10–12. Here, Wyatt makes no such exonerative factual allegations; rather, he paints a picture of a man who reasonably could be perceived as intoxicated.

Alternatively, if the facts did not establish probable cause to arrest Wyatt for public intoxication, the magistrate's issuance of an arrest warrant for that crime, as alleged in the complaint, serves to insulate Officer Reynolds from liability. "[I]t is . . . well established that where an officer presents all relevant probable cause evidence to an intermediary, such as . . . a magistrate, the intermediary's independent decision to seek a warrant, issue a warrant, or return an indictment breaks the causal chain and insulates the officer from a section 1983 claim based on lack of probable cause for an arrest or prosecution." *Rhodes v. Smithers*, 939 F. Supp. 1256, 1274 (S.D.W. Va. 1995) (collecting cases), *aff'd* 91 F.3d 132 (4th Cir. 1996); *see also Zhao v. McClain*, No. 7:19-cv-538, 2021 WL 24684, at *6 (W.D. Va. Jan. 4, 2021). This insulation from liability is more or less definitive unless a plaintiff can show that the officer lied to or withheld relevant information from the neutral intermediary "or brought some

undue pressure to bear on the intermediary [such] that the intermediary's independent judgment was overborne." *Snider v. Lee*, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring).

Plaintiff argues that Officer Reynolds is not protected by the magistrate's independent determination and cites a single sentence in his complaint: "Defendant Reynolds then proceeded to get a warrant for Mr. Wyatt's arrest based upon public intoxication. *Defendant Reynolds had to either falsify evidence to the magistrate or presented* [sic] *Mr. Wyatt's case with extreme disregard for the truth.*" (Am. Compl. ¶ 16 (emphasis added).) According to Plaintiff, this single sentence is a sufficient allegation to permit his claim to go forward.

It isn't. In fact, this "allegation"—on which Plaintiff basis the entirety of Count I—is nothing more than a sheep in wolf's clothing. By saying Defendant "had to either" falsify evidence or mislead the magistrate, Plaintiff effectively concedes that he lacks any knowledge—either on information *or* belief—from which he can allege that Officer Reynolds did *either* of those things. This phrasing is no more than a supposition by Plaintiff's counsel (rather than an allegation that Defendant Reynolds did *anything*), assuming that the *only* way a neutral third-party could find probable cause on these facts is through deceit by the arresting officer. But Plaintiff's purported inability to understand a particular course of action is simply not fact, and his refusal to plead the necessary predicates for his claim is either the result of inartful pleading or, more likely, a tacit admission that he cannot back up his claim with any facts. Supposition badly masquerading as allegation does not satisfy the pleading requirements, so Count I must be dismissed.

### B. Count II: Deliberate Indifference to Serious Medical Needs

Defendant Reynolds contends that Plaintiff's amended complaint fails to allege that Wyatt was suffering from a serious medical need or that he was deliberately indifferent to it.

Because Wyatt was a "pretrial detainee and not a convicted prisoner," the Fourteenth Amendment governs his claim. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To state a claim for deliberate indifference to a medical need in violation of the Fourteenth Amendment, a plaintiff must allege that:

> (1) [the pretrial detainee] had a medical condition or injury that posed a substantial risk of serious harm; (2) that the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied* 144 S. Ct. 2631 (2024). This revised standard differs from prior iterations in that a plaintiff "no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* In the wake of *Short*, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "[I]t is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). But, as has always been the case, a showing of negligence is "not enough." *Id.* at 612.

- 10 -

A condition is objectively serious if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 U.S. 225, 241 (4th Cir. 2008) (internal quotation omitted).

Taking their arguments in turn, Reynolds contends that Plaintiff has failed to "plead a single fact to establish that [he] knew or should have known about Mr. Wyatt's acute pancreatitis or acute alcohol withdrawal syndrome." (Reynolds Br. in Supp. Mot to Dismiss at 8 [ECF No. 34].) As it relates to Reynolds's encounter with Wyatt in the field, the court agrees. At most, a reasonable officer would have believed that Wyatt was suffering from garden-variety inebriation; nothing in the complaint can reasonably be interpreted as suggesting more than that.[6] *See Grayson*, 195 F.3d at 696 (finding no deliberate indifference where a detainee's "symptoms hardly distinguish him from the multitude of drug and alcohol abusers the police deal with" every day), *abrogated on other grounds as recognized in Short*, 87 F.4th at 609.

But Plaintiff paints a much more serious picture once Reynolds arrived at the jail with Wyatt. At that point (in addition to the presumed delirium, hallucinations, attention and cognition issues, agitation, and sweating), Plaintiff alleges that Wyatt "could not . . . extricate himself from the police vehicle. Indeed, Mr. Wyatt could not walk and needed to be

---

[6] Plaintiff does allege that Wyatt did not smell of alcohol and that "there were no signs of drugs or drug use, as evidenced by Mr. Wyatt's clean toxicology report." (Am. Compl. ¶ 13.) But that allegation is starkly at odds with the allegation that Wyatt was suffering from delirium, hallucinations, disorganized cognitive processes, agitation, and profuse sweating consistent with his allegedly obviously debilitating alcohol withdrawal syndrome. Plaintiff cannot have it both ways; it cannot be that *nothing* suggested that Wyatt was enfeebled in any way (so as to make his arrest unlawful) yet *so apparently obvious* that he was in grave danger (so as to open the officers to liability for deliberate indifference to a serious medical need). The court presumes that Wyatt was exhibiting the symptoms of alcohol withdrawal syndrome which, as noted, could reasonably be interpreted as indicia of intoxication.

- 11 -

transported into the jail by wheelchair." (Am. Compl. ¶ 15.) That is similar to the plaintiff in *Mays v. Sprinkle*, 992 F.3d 295 (4th Cir. 2021), as Plaintiff correctly points out.

In *Mays* the Fourth Circuit found that David Mays's severe intoxication, prior to his death, was a serious medical need, based on Mays's "inhibited . . . ability to talk, walk, and even sit," and reversed the district court's dismissal of his estate's complaint alleging deliberate indifference.[7] *Id.* at 298, 303. In that case, Mays was discovered "sitting in the cab of his pickup truck so intoxicated that he could hardly lift his head to communicate." *Id.* at 298 (internal quotation omitted). Mays had "bloodshot eyes" and "mumbled and slurred his speech." *Id.* When he was taken to the police station for booking, "he was unable to get out of the car by himself" and the arresting officer had to take his "feet and place[ ] them on the ground." *Id.* at 299.

Once before the magistrate, "Mays was unable to sit upright on the bench, so [a lieutenant] directed him to 'sit at the end of the bench and lean against the wall to keep from falling over.'" *Id.* When he was booked, he "required assistance removing his shoes, eyeglasses, and other personal effects before being put in a cell." *Id.* Sometime later, he was discovered unconscious in his cell, and it was later determined that he "died from acute hydrocodone, gabapentin, citalopram, and alprazolam intoxication." *Id.*

In finding that Mays's estate had stated a claim for deliberate indifference (and that the officers were not entitled to qualified immunity), the Fourth Circuit held that the claims met

---

[7] What's more, *Mays* was decided before *Short*, so the court in *Mays* applied the heightened Eighth Amendment standard to the deliberate-indifference claim. That the Fourth Circuit still found the estate's allegations stated a claim for deliberate indifference conclusively establishes that Plaintiff's allegations are amply sufficient to meet the post-*Short* standard.

both the objective and subjective prongs of the applicable test for deliberate indifference under the Fourteenth Amendment. As it related to the objective prong, Mays's intoxication constituted a serious medical condition despite the fact that "[n]o physician diagnosed Mays's medical condition as one mandating treatment." *Id.* at 302. The officers knew he was "extremely intoxicated and had consumed drugs and alcohol; they knew his level of intoxication substantially limited his ability to talk, walk, and even sit; and they witnessed his unconscious or semi-conscious state throughout the evening." *Id.* at 302 (internal quotation omitted).

Plaintiff makes strikingly similar allegations here. He alleges that, upon arrival at the jail, "Wyatt could not . . . extricate himself from the police vehicle" and "could not walk and needed to be transported into the jail by wheelchair." (Am. Compl. ¶ 15.) At booking and during his medical screening, Wyatt was "unable to answer . . . questions" posed to him by Defendant Skrocki. These facts, taken as true, would establish that, like David Mays, Wyatt was suffering from a serious medical condition at the time he arrived at the jail and both Reynolds, as the arresting officer, would have been aware of his condition.[8]

Turning to the subjective prong, Plaintiff has sufficiently alleged that both Reynolds failed to act "to appropriately address the risk that [Wyatt's] condition posed" and that he "should have known" that his inaction "posed an unjustifiably high risk of harm." *Short*, 87 F.4th at 611. Whether Wyatt was intoxicated or not,[9] the facts facing Reynolds, as alleged in

---

[8] It is important to note that Plaintiff *does not* allege that Wyatt or Skrocki was aware of his worsening condition once placed in his cell. (*See* Am. Compl. ¶¶ 19–22.)

[9] As it relates to Reynolds, Plaintiff specifically alleges that he "knew that something was wrong with" Wyatt, which is why he called Wyatt's fiancée before arresting him. (Am. Compl. ¶ 11.)

- 13 -

the complaint, indicate a serious problem in need of medical attention. If Wyatt was suffering from some acute intoxication (either drugs or alcohol), then his worsening state while in Reynolds's custody indicated a need for medical care above and beyond the run-of-the-mill drug or alcohol user police officers typically encounter. *See Mays*, 992 F.3d at 305; *Grayson*, 195 F.3d at 696. And if Wyatt was not intoxicated—as alleged in the complaint and buttressed by his subsequent diagnosis of alcohol withdrawal syndrome and the fact that Wyatt is alleged not to have smelled of alcohol (*see* Am. Compl. ¶¶ 13, 22)—then his worsening condition and increasingly alarming symptoms cried out even more loudly for medical intervention. *See Stockton v. Wake County*, 173 F. Supp. 3d 292, 310–11 (E.D.N.C. 2016) (denying summary judgment where a detainee "was not sleeping off the effects of [an] intoxicant; rather, his condition was becoming more critical, pronounced, and dire"). In the face of these facts, it would be "objectively unreasonable" to fail to secure medical attention for Wyatt. Accordingly, Plaintiff has stated a claim for deliberate indifference to a serious medical need, and the motions to dismiss Count II will be denied.

### C. Count III: Implementation of an Unconstitutional Policy

Sheriff Mondul moves to dismiss Count III, which is brought against him in his individual capacity. Mondul contends that, because Plaintiff's claim is one alleging that, as Sheriff, he implemented an unconstitutional policy or procedure, such a claim is actionable only against the municipality and therefore against him only in his official capacity. *See Monell v. Dept' of Soc. Servs.*, 436 U.S. 658, 690 (1978). But because he cannot be sued in his official capacity, *see Frye v. Jenkins*, No. 3:22-cv-00070, 2023 WL 4670332, at *2 (W.D. Va. July 19, 2023) (collecting cases), Plaintiff's effort to shoehorn his complaint into a personal-capacity

suit is misplaced. Plaintiff counters that, as recognized in *Gordon v. Schilling*, 937 F.3d 348 (4th Cir. 2019), an individual can be held responsible for the implementation of an unconstitutional policy in certain circumstances.

Plaintiff has the better argument. First, although liability for an unconstitutional policy is typically reserved for municipalities, *see Monell*, 426 U.S. at 690, the Fourth Circuit has recognized that individual liability on the implementing official is permitted, *see Gordon*, 937 F.3d at 362 ("The defendants are incorrect, however, in their assertion that a person injured by an unconstitutional policy is limited to an official-capacity claim against the official who created or enforced that policy."). In *Gordon*, the plaintiff, Carl Gordon, an inmate housed by the Virginia Department of Corrections ("VDOC"), sued Mark Amonette, the chief physician for VDOC, arguing that Amonette's failure to rescind a policy that excluded Gordon from treatment for chronic Hepatitis C virus ("HCV") because he was technically "parole eligible" and Amonette's failure implement a policy for the treatment of HCV while new guidelines were being crafted constituted deliberate indifferent to a serious medical need, was a violation of Gordon's rights, and was actionable against Amonette personally under 42 U.S.C. § 1983. *See id.* at 354. In holding that Amonette was not entitled to summary judgment, the Fourth Circuit explicitly endorsed that a person can be individually liable for implementation of a policy that results in constitutional harm to third parties, so long as that harm is foreseeable. *See id.* at 362 (holding that a defendant "may not escape liability by claiming that he did not know the identities of the inmates who would suffer under his policies. To rule otherwise would encourage prison officials to turn a blind eye to the real-world consequences of their

policymaking and permit them to escape liability for constitutional harms caused by their decisions.").

Like the plaintiff in *Gordon*, Plaintiff alleges that Mondul instituted a policy whose future constitutional harm was imminently foreseeable. He alleges that, as Sheriff, Mondul "created or authorized a policy of deliberate indifference by allowing inmates and detainees to be admitted into the [jail] without proper medical screening, thereby creating a substantial risk of permanent physical injury and death resulting in the unnecessary and wanton infliction of pain . . . ." (Am. Compl. ¶ 50.) Such a policy, if instated, is certainly of the type found in *Gordon* to require submission of the facts to a jury and is sufficient to state a claim at this early stage.

Mondul's arguments otherwise are unpersuasive. First, he argues that Plaintiff cannot rely solely on what happened to Wyatt to state his claim. It is true that a single incident, without more, is generally insufficient to establish the existence of an official policy or custom. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). But Plaintiff's burden of proof is considerably higher than his pleading obligation: "[a]lthough proving a policy or custom . . . is quite difficult, pleading one is less so." *Graening v. Wexford Health Sources, Inc.*, No. 1:20-00400, 2022 WL 2070633, at *1 (S.D.W. Va. June 8, 2022) (citing *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014)). Here, Plaintiff has sufficiently alleged that Mondul instituted a policy of "failing to screen and provide medical care to inmates upon admission to the [jail] . . . ." (Am. Compl. ¶ 51.) That is enough, at this early stage. Contrary to Mondul's argument, Plaintiff is not required to "detail the facts underlying his claims, or . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d

333, 339 (4th Cir. 1994). At trial, Plaintiff will undoubtedly have to rely on more, but he is entitled to the opportunity to make his case at the proper time. For now, he has alleged the existence of an unconstitutional policy, instituted by Mondul, that results in constitutional harm to foreseeable victims. That is enough.

Next, Mondul argues that Plaintiff's allegations "show that Mondul himself did not create an unconstitutional policy at all" because Virginia law "provides that the State Board of Local and Regional Jails govern the operation of local jails." (Defs.' Reply Br. at 5 [ECF No. 40].) This argument fares even worse. That Virginia law vests authority of its jails in certain bodies does nothing to establish whether or not Mondul instituted an unconstitutional policy. The fact that a policy, if instituted, would violate *both* the Constitution *and* Virginia law should come as no surprise. Moreover, there is no requirement that an unconstitutional policy be legally issued in order to be actionable; arguably, any unconstitutional policy is, by definition, unlawful.

Plaintiff's pleading requirements do not mirror his burden of proof, and because Mondul need not have validly issued an unconstitutional policy for it to be actionable under § 1983, Mondul's arguments in favor of dismissal do not carry the day. Plaintiff has alleged a valid cause of action, and Mondul's motion to dismiss Count III must be denied.

### IV.   CONCLUSION

Because there was probable cause to arrest Wyatt for public intoxication, the court will grant the motion to dismiss Count I. But Plaintiff has adequately stated claims for deliberate indifference and implementation of an unconstitutional policy, and the motion to dismiss those claims will be denied.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 21st day of July, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE